UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**

MAY 1 5 2008

May 15 2008

~~Judge Samuel Der-Yeghiayan~~
~~U.S. District Court~~

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 08 CR 108-1 |
| vs. | ) | Judge Der-Yeghiayan |
| | ) | |
| LARRY MELVIN | ) | |

## PLEA AGREEMENT

1.      This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and defendant LARRY MELVIN, and his attorney, RICHARD S. JALOVEC, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(C), Rule 11(c)(1)(A) and Rule 11(c)(1)(B), as more fully set forth below.  The parties to this Agreement have agreed upon the following:

### Charges in This Case

2.      The indictment in this case charges defendant with wire fraud, in violation of Title 18, United States Code, Section 1343 (Counts 1-8).

3.      Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney.

4.      Defendant fully understands the nature and elements of the crimes with which he has been charged.

## **Charge to Which Defendant is Pleading Guilty**

5.      By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to Count One of the indictment.  Count One charges defendant with devising, attempting to devise and participating in a scheme to use a wire in interstate commerce to obtain money and property owned by and under the custody of banks and lenders, by means of materially false and fraudulent pretenses, representations and promises, in violation of Title 18, United States Code, Section 1343.  In addition, as further provided below, defendant agrees to the entry of a forfeiture judgment.

## **Factual Basis**

6.      Defendant will plead guilty because he is in fact guilty of the charge contained in Count One of the indictment.  In pleading guilty, defendant admits the following facts and that those facts: establish his guilt and relevant conduct beyond a reasonable doubt, constitute Relevant Conduct within the meaning of Guideline § 1B1.3(a)(2), and establish a basis for forfeiture of the property described elsewhere in this Plea Agreement:

Defendant Larry Melvin admits that beginning in or about 2003 and continuing through in or about 2005, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, he, together with co-defendants Shaun Chaney, Maria Vega and Mary Dochee, and others, devised, attempted to devise, and participated in a scheme to defraud and to obtain money and property owned by and under the custody and control of BNC Mortgage and other banks and lenders, by means of materially false and fraudulent

2

pretenses, representations, and promises. Defendant further admits that in furtherance of the scheme, on or about January 30, 2004, at Wilmette, in the Northern District of Illinois, Eastern Division, and elsewhere, he and co-defendant Maria Vega, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce, certain wirings, signs, and signals, namely, a funds transfer in the amount of approximately $163,078 from Deutsche Bank, in New York, New York, to US Bank in Cincinnati, Ohio, for credit to the account of City Suburban Title, which funds represented the proceeds of a mortgage loan issued to Buyer A for the purchase of a residence located at 325 S. 24th Avenue, Bellwood, Illinois, in violation of Title 18, United States Code, Sections 1343 and 2.

More specifically, defendant admits he has been a licensed loan officer (also called a loan originator) in the State of Illinois since 2005, and practiced as a loan officer in Illinois since 1997. Defendant worked at Equity Express as a loan officer from approximately March 2003 to approximately March 2006.

Defendant admits that both prior to and during his employment at Equity Express, he engaged in deceptive practices to fraudulently qualify individuals for mortgage loans for which they would not otherwise be qualified, including: (1) purchasing and submitting to lenders fake and inaccurate employment documents, including W-2 wage and tax statements ("W-2s") and pay stubs; (2) purchasing and submitting to lenders fake and inaccurate verification of rent ("VOR") forms; (3) artificially inflating the income amount

3

of borrowers on loan applications for borrowers applying for "stated" loans (loans where no supporting documents for claimed income are required); (4) submitting to lenders fake leases that claimed rental income for borrowers; (5) submitting borrowers for multiple loans for different properties and on each loan falsely indicating that the borrower will occupy the properties; (6) advising borrowers or their surrogates that the lender's requirements for verifications of deposit could be met by temporarily depositing an amount of money, and that requirements for down payments could be met through false gift letters; (7) knowingly inputting false and inaccurate financial information on loan applications, such as income and assets among other things; (8) not disclosing on HUD-1 settlement statements the disbursement of sale proceeds by property sellers to the property buyers or their surrogates; and, (9) purchasing and submitting to lenders fake and inaccurate bank statements to make it appear that borrowers had more assets and funds than they actually possessed. Defendant further admits that approximately 60% to 70% of the loans he arranged involved one or more of these fraudulent and deceptive methods, which he knew were false at the time he submitted the loan applications.

Defendant admits he and co-defendant Shaun Chaney and Maria Vega prepared, and caused others to prepare, mortgage loan application packages that were fraudulent, in that they contained a variety of false statements regarding the buyers' employment, income, assets and liabilities, and were designed to induce lenders to issue mortgage loans to buyers who would not otherwise have qualified for such loans.

4

Defendant admits he, co-defendants Shaun Chaney and Mary Dochee, and others, recruited individuals to buy properties through Equity Express by promising potential buyers they would not have to use any of their own money for down payments or earnest money deposits, that the properties were ready for occupancy, and that they would be paid money to act as buyers and attend the closings. Whenever one of defendant's borrower clients did not have sufficient funds in his bank account to obtain a loan, defendant admits he routinely explained to the borrower or the individuals who recruited the borrower ("investors") that the borrower needed to get the funds from some other source and place the funds in the borrower's bank account to make it appear as if the funds were the borrower's own. Defendant admits being aware that in those instances, the funds were coming from a third party, which was not disclosed on the loan application. To verify the falsely inflated deposit amounts, defendant or the investors purchased false bank statements, which they provided to the lenders to support the false information on the loan applications. Defendant admits he did not disclose to the lenders the fact that the borrower's accounts were falsely inflated.

Defendant admits he, co-defendants Shaun Chaney and Mary Dochee, and others referred the buyers to co-defendant Maria Vega and other loan officers and loan processors at Equity Express so fraudulent mortgage loan applications could be prepared on the buyers' behalf. Defendant also admits he often told lenders he had met face-to-face with the borrowers when, in reality, he never met or talked with the borrower.

5

Instead, defendant obtained documents, including false documents, from the investors and did not receive the documents or information from the borrowers.

Defendant admits he and co-defendants Shaun Chaney, Maria Vega and Mary Dochee created, and caused others to create, false W-2 Wage and Tax Statements ("W-2s"), false earnings statements, false verifications of employment ("VOEs"), false verifications of rent ("VORs"), false leases and false tenant ledgers to support the false statements in the loan applications regarding the buyers' employment and income; and false verifications of deposit ("VODs") to support the false representations in the loan applications regarding the amounts of money and sources of the deposits in the buyers' bank accounts. Typically, defendant notified co-defendant Dochee when he needed a false VOR, and Dochee agreed to allow defendant to use Company A for the false verification. Defendant also referred other loan officers, including co-defendant Shaun Chaney, to Dochee for purposes of obtaining false VORs.

Defendant admits he created or had others create false leases that falsely showed that a borrower was receiving or was going to receive rental income in instances where a borrower owned or was purchasing a multi-unit building. Sometimes defendant signed the documents as either the tenant or landlord; he also had others at Equity Express, including co-defendant Maria Vega, sign the false leases. Defendant also falsely inflated the rental income or created false leases when lender representatives instructed him to do so to qualify the borrower for the loan.

6

Defendant and his co-defendant Maria Vega caused some fraudulent mortgage loan packages submitted to lenders to misrepresent that the buyers had paid rent for properties managed by a property management company called Ezra, Inc. and by Company A, when in fact neither company managed the properties at issue, and the buyers did not rent property through them. Defendant obtained the funds to pay for the false VORs from either the borrowers or the investors who referred the borrowers to him. On at least one occasion, defendant gave the funds directly to either Varena McCloud or to Individual B in exchange for a false VOR. Defendant admits he did not disclose the false nature of the VORs to the lenders who approved the borrowers' loans.

Defendant further admits if a borrower he was trying to get a loan for had a high enough credit score, but did not have sufficient income to obtain a loan, he submitted the borrower for a stated loan and falsely inflated the borrower's income to a level sufficient to qualify the borrower for the loan.

Defendant admits he and his co-defendants Shaun Chaney, Maria Vega and Mary Dochee submitted, and caused others to submit fraudulent loan application packages to lenders, knowing that the false statements in those documents were material to the lenders' decisions to issue mortgage loans to buyers of the properties, and were made for the purpose of inducing the lenders to issue loans to individuals who were not qualified for the loans.

7

Defendant admits he and co-defendants Shaun Chaney and Mary Dochee received the proceeds of mortgage loans that lenders issued to buyers of the properties on or near the dates of the closings on the property sales, and that defendants and their co-schemers used those loan proceeds to enrich themselves and to keep the scheme going by using the funds to fraudulently buy and sell more property. Beginning in approximately 2005, lenders stopped allowing investors (*i.e.*, persons who referred borrowers to defendant) to be compensated from proceeds from the sale. Defendant admits that after the prohibition on payments to investors took effect, he and the investors, including co-defendant Shaun Chaney, caused the lenders to continue to disburse money to the investors, but did not disclose those payments on the HUD-1 statements.

Defendant admits providing false loan applications and related documents to lenders, including BNC Mortgage, Encore Credit Corporation, Peoples Choice Home Loan, Argent Mortgage, Fremont Investment and Loan, Long Beach Mortgage, Olympus Mortgage, Aegis Wholesale, CIT Group, First Guaranty Mortgage Corporation, Accredited Home Lenders, Maribella Mortgage, First Franklin, and their successors, among others.

It was further part of the scheme that defendant concealed, misrepresented, and hid, and caused to be concealed, misrepresented, and hidden, the existence of the scheme and the purposes of the scheme.

8

Defendant admits that as a result of his fraudulent acts, various banks and lenders issued mortgage loans to the buyers of approximately 66 properties for an amount totaling approximately $12,905,732, which resulted in losses to the banks and lenders on the mortgage loans because they were not repaid by the borrowers and because at least some of the properties were abandoned or in poor condition.

Melvin also admits, pursuant to Guideline § 1B1.3(a)(2), that he regularly purchased false W-2s, pay stubs, bank statements and other documents from Individual C, which he then used to qualify buyers for loans to which they were otherwise not entitled. Melvin also referred other persons to Individual C for the same service.

7.    The foregoing facts are set forth solely to assist the Court in determining whether a factual basis exists for defendant's plea of guilty and criminal forfeiture, and are not intended to be a complete or comprehensive statement of all the facts within defendant's personal knowledge regarding the charged crimes and related conduct.

## Maximum Statutory Penalties

8.    Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

a.    A maximum sentence of 30 years' imprisonment because the offense affected a financial institution. Pursuant to Title 18, United States Code, Section 3561, defendant may not be sentenced to a term of probation for this offense. This offense also carries a maximum fine of $1,000,000, or twice the gross gain or gross loss resulting from

9

that offense, whichever is greater.  Defendant further understands that the judge also may impose a term of supervised release of not more than five years.

b.    Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court.

c.    In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty or restitution imposed.

### Sentencing Guidelines Calculations

9.    Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines.  Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

10.    For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a.    **Applicable Guidelines**.    The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing.  The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2007 Guidelines Manual.

10

b.    **Offense Level Calculations.**

i.    The base offense level for the charge in Count One of the indictment is 7, pursuant to Guideline § 2B1.1(a)(1);

ii.    Pursuant to Guideline § 2B1.1(b)(1)(K), the base offense level is increased by sixteen levels because the loss is more than $1,000,000 but less than $2,500,000;

iii.    Defendant acknowledges the loss amounts and, therefore, the offense level and Guidelines range, may increase as additional losses are realized from the fraudulent transactions in which defendant participated.

iv.    Pursuant to Guideline § 2B1.1(b)(9)(C), the base offense level is increased by two levels because the offense involved sophisticated means;

v.    Pursuant to Guideline § 3B1.3, the base offense level is increased by two levels because defendant abused a position of private trust in a manner that significantly facilitated the commission of the offense.

vi.    Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct.    If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline §3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy

11

any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

vii.    In accord with Guideline §3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.  Therefore, as provided by Guideline §3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

c.    **Criminal History Category.**    With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

i.    On or about April 14, 2006, defendant was convicted of driving under the influence in the Circuit Court of Cook County and sentenced to 18 months supervision.  Pursuant to Guideline § 4A1.2(c), defendant receives zero criminal history points for this conviction.

d.    Defendant and his attorney and the government acknowledge that the above Guideline calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely.  Defendant understands that further review of

12

the facts or applicable legal principles may lead the government to conclude that different or additional Guideline provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

e.     Both parties expressly acknowledge that while none of the Guideline calculations set forth above are binding on the Court or the Probation Office, the parties have agreed pursuant to Fed.R.Crim.P. 11(c)(1)(B) that certain components of those calculations – specifically, those set forth above in subparagraphs 10(b)(i) and 10(b)(iii-vii) of this paragraph – are binding on the parties, and it shall be a breach of this Plea Agreement for either party to present or advocate a position inconsistent with the agreed calculations set forth in the identified subparagraphs.

### Cooperation

11.     Defendant agrees he will fully and truthfully cooperate with the United States Attorney for the Northern District of Illinois in any matter in which he is called upon to cooperate. This cooperation shall include providing complete and truthful information in any investigation and pre-trial preparation and complete and truthful

13

testimony in any criminal, civil or administrative proceeding. Only the United States Attorney for the Northern District of Illinois may require defendant's cooperation pursuant to this Plea Agreement. Defendant agrees to the postponement of his sentencing until after the conclusion of his cooperation.

### Agreements Relating to Sentencing

12. At the time of sentencing, the government shall make known to the sentencing judge the extent of defendant's cooperation. If the government determines that defendant has continued to provide full and truthful cooperation as required by this plea agreement, then the government shall move the Court, pursuant to Guideline §5K1.1, to depart from the applicable Guideline range and to impose the specific sentence agreed to by the parties as outlined below. Defendant understands that the decision to depart from the applicable guidelines range rests solely with the Court.

13. If the government moves the Court, pursuant to Sentencing Guideline §5K1.1, to depart from the applicable Guideline range, as set forth in the preceding paragraph, this Agreement will be governed, in part, by Federal Rule of Criminal Procedure 11(c)(1)(C). That is, the parties have agreed that the sentence imposed by the Court shall include a term of imprisonment in the custody of the Bureau of Prisons of 75 percent of the low end of the applicable advisory guideline range. Other than the agreed term of incarceration, the parties have agreed that the Court remains free to impose the sentence it deems appropriate. If the Court accepts and imposes the agreed term of

incarceration set forth, defendant may not withdraw this plea as a matter of right under Federal Rule of Criminal Procedure 11(d) and (e). If, however, the Court refuses to impose the agreed term of incarceration set forth herein, thereby rejecting this plea agreement, or otherwise refuses to accept defendant's plea of guilty, either party has the right to withdraw from this plea agreement.

14.    If the government does not move the Court, pursuant to Sentencing Guideline §5K1.1, to depart from the applicable Guideline range, as set forth above, this plea agreement will not be governed, in any part, by Federal Rule of Criminal Procedure 11(c)(1)(C), the preceding paragraph of this plea agreement will be inoperative, and the Court shall impose a sentence taking into consideration the factors set forth in 18 U.S.C. § 3553(a) as well as the Sentencing Guidelines without any downward departure for cooperation pursuant to §5K1.1. Defendant may not withdraw his plea of guilty because the government has failed to make a motion pursuant to Sentencing Guideline §5K1.1.

15.    Regarding restitution, the parties acknowledge that  pursuant to Title 18, United States Code, § 3663A, the court must order defendant, together with any jointly liable co-defendants, to make full restitution to lenders he defrauded, including BNC Mortgage, Encore Credit Corporation, Peoples Choice Home Loan, Argent Mortgage, Fremont Investment and Loan, Long Beach Mortgage, Olympus Mortgage, Aegis Wholesale, CIT Group, First Guaranty Mortgage Corporation, Accredited Home Lenders, Maribella Mortgage, First Franklin, or their successors, in an amount to be determined by

the Court at sentencing, which amount shall reflect credit for any funds repaid prior to sentencing. Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing.

16.    Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

17.    After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the indictment as to this defendant.

### Forfeiture

18.    The indictment charges that defendant is liable to the United States for approximately $19,200,000, which funds are subject to forfeiture because those funds were involved in the violations alleged in the scheme charged in Count One. By entry of a guilty plea to Count One of the indictment, defendant acknowledges that the property identified above is subject to forfeiture.

19.    Defendant agrees to the entry of a forfeiture judgment in the amount of $2,472,160, in that this property is subject to forfeiture. Prior to sentencing, defendant agrees to the entry of a preliminary order of forfeiture relinquishing any right of ownership he has in the above-described funds and further agrees to the seizure of these funds so that these funds may be disposed of according to law.

20.    Defendant understands that forfeiture of this property shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon defendant in addition to the forfeiture judgment.

## Presentence Investigation Report/Post-Sentence Supervision

21.    Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to the issue of sentencing, including the nature and extent of defendant's cooperation.

22.    Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline §3E1.1 and enhancement of his sentence for obstruction of justice under Guideline §3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

17

23.     For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release to which defendant is sentenced.  Defendant also agrees that a certified copy of this Plea Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Plea Agreement

24.     This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 08 CR 108-1.

25.     This Plea Agreement concerns criminal liability only.  Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver or release by the United States or any of its agencies of any administrative or judicial civil claim, demand or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for

18

the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities, except as expressly set forth in this Agreement.

## Waiver of Rights

26.    Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a.    **Trial rights.** Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

i.    The trial could be either a jury trial or a trial by the judge sitting without a jury. Defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.    If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii.    If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant

19

guilty beyond a reasonable doubt, and that the jury could not convict him unless, after

hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that

it was to consider each count of the indictment separately. The jury would have to agree

unanimously as to each count before it could return a verdict of guilty or not guilty as to

that count.

iv.     If the trial is held by the judge without a jury, the judge would

find the facts and determine, after hearing all the evidence, and considering each count

separately, whether or not the judge was persuaded that the government had established

defendant's guilt beyond a reasonable doubt.

v.     At a trial, whether by a jury or a judge, the government would

be required to present its witnesses and other evidence against defendant. Defendant

would be able to confront those government witnesses and his attorney would be able to

cross-examine them.

vi.     At a trial, defendant could present witnesses and other

evidence in his own behalf. If the witnesses for defendant would not appear voluntarily,

he could require their attendance through the subpoena power of the Court. A defendant

is not required to present any evidence.

vii.     At a trial, defendant would have a privilege against self-

incrimination so that he could decline to testify, and no inference of guilt could be drawn

20

from his refusal to testify.  If defendant desired to do so, he could testify in his own behalf.

b.     **Waiver of appellate and collateral rights.**     Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial.  Defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this, if the government makes a motion at sentencing for a downward departure pursuant to Sentencing Guideline § 5K1.1, defendant knowingly waives the right to appeal his conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, and including any order of restitution or forfeiture, in exchange for the concessions made by the United States in this Plea Agreement.  In addition, defendant also waives his right to challenge his conviction and sentence, and the manner in which the sentence was determined, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255.  The waiver in this paragraph does not apply to a claim of involuntariness, or ineffective assistance of counsel, which relates directly to this waiver or to its negotiation.

c.    Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

## Other Terms

27.    Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

28.    Defendant understands that pursuant to Title 12, United States Code, Section 1829, his conviction in this case will prohibit him from directly or indirectly participating in the affairs of any financial institution insured by the Federal Deposit Insurance Corporation (FDIC) except with the prior written consent of the FDIC and, during the ten years following his conviction, the additional approval of this Court. Defendant further understands that if he violates this prohibition, he may be punished by imprisonment for up to five years and a fine of up to $1,000,000.

## Conclusion

29.    Defendant understands that this Plea Agreement will be filed with the Court, will become a matter of public record and may be disclosed to any person.

30.    Defendant understands that his compliance with each part of this Plea Agreement extends throughout the period of his sentence, and failure to abide by any term

22

of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

31.    Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Plea Agreement to cause defendant to plead guilty.

32.     Defendant acknowledges that he has read this Plea Agreement and carefully reviewed each provision with his attorney.   Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.


AGREED THIS DATE:   ___5/15/08___


_____          _____
PATRICK J. FITZGERALD                        LARRY MELVIN
United States Attorney                           Defendant


_____          _____
LISA M. NOLLER                                   RICHARD S. JALOVEC
MEGAN CHURCH                                 Attorney for Defendant
Assistant U.S. Attorneys